# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | CASE NO. 1:19-CR-00110 |
| | ) | |
| PLAINTIFF, | ) | JUDGE BENITA PEARSON |
| | ) | |
| vs. | ) | **MOTION TO SUPPRESS EVIDENCE** |
| | ) | **SEIZED AS THE RESULT OF AN** |
| TORIONO D. BURTON | ) | **ILLEGAL STOP, SEIZURE, AND** |
| | ) | **SEARCH** |
| DEFENDANT. | ) | **(ORAL HEARING REQUESTED)** |

Now comes defendant, TORIONO D. BURTON, by and through undersigned counsel, Joseph P. Morse, and respectfully moves this Honorable Court for an order suppressing and excluding from evidence at trial all items seized during an illegal search and seizure of both Mr. Burton and his vehicle, together with all statements and other evidence obtained as the fruits of the search. This motion is brought pursuant to Fed. R. Crim. P 12(b)(3)(C) and the Fourth, Fifth, and Fourteenth Amendment to the Constitution of the United States. Additional grounds for this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,


/s/ Joseph P. Morse
JOSEPH P. MORSE (0073298)
323 W. Lakeside Ave. Suite 300
Cleveland, Ohio 44113
Tel: 216-241-0520
Fax: 216-241-6961
Email: jpm@morse-law.com

Attorney for Toriono D. Burton

<u>**MEMORANDUM IN SUPPORT**</u>

I.    STATEMENT OF FACTS

On or about December 10, 2018 a Cleveland Police Officer observed what appeared to be two men conducting a hand-to-hand transaction near one man's black Dodge Ram truck. The Officer noted that the man on foot, had a bulge in his sweatshirt pocket when he approached the vehicle and that the bulge was gone when he left. Based only on this observation, The Officer began to follow the truck as it drove away. The Officer stopped the truck after following it for over a mile. Notably, The Officer did not notice any traffic violations during that time. After conducting a traffic stop, The Officer approached the driver of the truck, who identified himself as Mr. Burton. Although Mr. Burton presented his driver's license, his automobile insurance had expired. After this exchange, The Officer returned to his vehicle to await backup from another officer. Once this officer arrived, he and The Officer decided to ticket Mr. Burton for a window tint violation, failure to wear a seatbelt, and a land-change violation.

Upon Mr. Burton's exit from the truck he signed the ticket, acknowledging that he was charged with failure to signal while changing lanes, nonconforming window tint, and a seatbelt violation. Rrespectively, these are two non-arrestable minor misdemeanors. The Officer, however, directed Mr. Burton to the back of Mr. Burton's vehicle and put him in handcuffs. When asked about the encounter that The Officer observed, Mr. Burton stated that the other man was giving Mr. Burton money that the other man owed him. When The Officer asked if Mr. Burton had "anything on him or in the truck," Mr. Burton responded that there was a firearm in his pocket. The Officer then searched Mr. Burton's person and truck, retrieving a plastic bag containing marijuana, several cellphones, and $4922 in U.S. currency. The Officer then arrested Mr. Burton for carrying a concealed weapon and having weapons while under disability.

Although Mr. Burton was initially prosecuted by the State of Ohio, the United States took over this case on February 28, 2019. The charges were amended to reflect the federal law, and Mr. Burton was charged with one count of Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Mr. Burton now comes before this Honorable Court, through undersigned counsel, and requests that the evidence against him be suppressed. First, The Officer did not possess the requisite suspicion to stop Mr. Burton or the probable cause necessary to conduct a traffic stop. Second, The Officer conducted a custodial interrogation of Mr. Burton without reading Mr. Burton's *Miranda* rights. And third, The Officer did not have the authority to conduct a search of Mr. Burton's vehicle.

II.     LAW AND ARGUMENT

The Fourth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, establishes the foundational obligation of the State to obtain probable cause prior to initiating searches and seizures of persons and property.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

The Supreme Court of the United States has recognized that "[t]he security of one's privacy against arbitrary intrusion by the police— which is at the core of the Fourth Amendment— is basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 27 (1949); *see also Mapp v. Ohio*, 367 U.S. 643, 679 (1961). Central to the Fourth Amendment protection is that officers establish probable cause prior to executing a search or seizure of a person.

The proper remedy for Fourth Amendment violations is exclusion of evidence obtained in a manner violative of the Amendment. *Mapp v. Ohio*, 367 U.S. 643, 671 (1961). "Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable." *Katz v. United States*, 389 U.S. 347, 357 (1962). The reviewing court must therefore determine the (non)validity of the search and/or seizure by testing, under the facts and circumstances of the particular case, whether it was reasonable to forego securing a warrant prior to intruding on the people's privacy interests.

A.    The Officer did not possess the requisite reasonable, articulable suspicion to stop Mr. Burton or probable cause to conduct a traffic stop.

To seize an individual in public without a warrant or exception to the warrant requirement, an officer must possess reasonable articulable suspicion that the individual is connected to criminal activity. *Terry v. Ohio*, 392, U.S. 1, 10 (1968). This suspicion must be based on objective facts, which, under the totality of the circumstances, lead an officer to believe that crime is afoot. *Terry*, 392 at 21. An officer must have more than a "hunch" that something suspicious has occurred. *Terry*, 392 U.S. at 27. In addition, an officer's good faith belief that something suspicious has occurred, if not based in reasonable suspicion, is not enough to allow a search. *Beck v. Ohio*, 379 U.S. 89, 97 (1964).

While a brief interaction between police and an individual does not violate the individual's Fourth Amendment rights, an officer must have requisite justification to elevate a consentual encounter to an investigatory stop and to seize the individual. A person has been seized when (1) the officer uses force or asserts authority and the individual acquiesces; and (2) the individual has an objectively reasonable belief that they are not free to leave. *California v. Hodari D.*, 499 U.S. 621, 628 (1991). The Officer stopped Mr. Burton without the requisite suspicion to do so. First, he relied on what "appeared" to be a hand-to-hand transaction between

Mr. Burton and another, unidentified man. But under the totality of the circumstances, this is not enough to create reasonable, articulable suspicion. Second, The Officer did not conduct a proper traffic stop. He waited until his second contact with Mr. Burton, after speaking with another officer, to cite Mr. Burton for the alleged traffic violations. For these reasons, The Officer's seizure of Mr. Burton was unreasonable, and this Court should suppress the evidence obtained against him.

  1.  Although The Officer observed what "appeared" to be a hand-to-hand transaction, he did not report any other behavior or circumstances that created reasonable, articulable suspicion for an investigatory stop.

While a hand-to-hand transaction, when combined with other factors, may create reasonable, articulable suspicion of criminal activity, the transaction alone is not enough for an officer to possess requisite suspicion. For example, "[h]and-to-hand transactions consistent with drug transactions are ‑highly probative' in evaluating reasonable suspicion." *United States v. Alexander*, 528 Fed. Appx. 515, 519 (6th Cir. 2013) quoting *United States v. Jones*, 673 F.3d 479, 502 (6th Cir. 2012). An officer may also have reasonable suspicion "based upon [a defendant's] hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area." *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006).

But while several factors combined may give an officer requisite suspicion to conduct a stop, one factor, alone, does not. When determining if reasonable suspicion existed, courts "must determine whether the individual factors, *taken as a whole*, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (emphasis added). In addition, all information considered under the totality of the circumstances must be known to the

officer before he begins an investigatory stop. *United States v. Blair*, 524 F. 3d 740, 752 (6th Cir. 2008). In *Paulette*, officers observed the defendant conduct a series of odd behaviors, which ultimately gave the officers suspicion to detain the defendant. The defendant conducted a hand-to-hand transaction with another person. He also did this in a high-crime area, attempted to hide something in his pocket upon the officers' approach, and attempted to flee from the officers as they approached. *Paulette* at 602. Viewing the totality of the circumstances, the officers in *Paulette* observed enough to reasonably suspect criminal behavior.

The facts in this case are a far cry from those in *Paulette*. Here The Officer reports that an unidentified man approached Mr. Burton, and as he did, The Officer could see a "bulge" in the man's pants. The Officer reported that Mr. Burton and the man "appeared to make a transaction." Mr. Burton drove away and The Officer, based only on what *appeared* to be a transaction, followed him, eventually stopping Mr. Burton's vehicle. Prior to this stop, The Officer does not note any other suspicious circumstances in his police report. He does not, for instance, report that Mr. Burton drove in a high-crime area, or in a neighborhood known for drug trafficking. He also reports that Mr. Burton complied fully with the instruction to pull over, and immediately handed The Officer his identification. Although, combined with other suspicious observations by an officer, a hand-to-hand transaction is "highly probable" of illicit behavior, a transaction observed independent of these other factors is not. Alone, this is an innocent behavior. And in fact, Mr. Burton reports that the man who spoke with him was simply paying Mr. Burton back the money he owed. For this reason, under the totality of the circumstances, the "apparent" transaction between Mr. Burton and another man was not sufficient to provide The Officer with the requisite suspicion to perform an investigative stop, and all evidence seized as a result should be suppressed.

2. <u>The traffic violations that The Officer tacks on to the end of his police report are pretextual, and were not observed prior to his traffic stop of Mr. Burton. Because of this, they do not justify the stop.</u>

The United States Supreme Court has declined to prohibit traffic stops on the basis that they are used as pretext to investigate another crime. *Whren v. United States*, 517 U.S. 806, 819 (1996). But to conduct a traffic stop, an officer must possess objective, probable cause that a violation occurred based on his own observations. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). The Sixth Circuit clarified this standard in *Fergusson*, explaining,

> We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop

*Fergusson* at 391.

The constitutionality of an investigative stop therefore rests upon an officer's "objective justifications, not his subjective motivation." *United States v. Murray*, 2019 U.S. App. LEXIS 12645 at *5 (6th Cir.). It is, however, important to note that an officer who stops a vehicle must have probable cause to do so *before* conducting the stop. *See Ferguson*, at 391 (indicating that the stop is a result of probable cause, and that the stop, therefore, may not *create* probable cause).

For example, an officer who observes a vehicle make an illegal lane change may stop that vehicle, despite the fact that the officer initially followed it as part of an ongoing investigation. *Murray* at *2. Similarly, an officer following a car because of suspected drug activity may stop that car because it does not have a visible license plate. *Ferguson*, at 387. What an officer *may not* do is pull someone over on less than probable cause—less than *reasonable, articulable suspicion*—and then, upon noticing traffic violations, allege that a stop was based on these all

7

along. But that is exactly what The Officer did. After following Mr. Burton for nearly a mile, The Officer decided to execute a traffic stop. But The Officer does not note in his report that this stop was the result of any traffic violation. In fact, only after noting that he stopped the car, approached it, spoke with Mr. Burton, returned to his cruiser, and communicated with another officer, does The Officer refer to any traffic violations. This indicated that The Officer did not observe these violations, giving him objective probable cause to make a traffic stop. Rather, based on his own, subjective determinations, The Officer stopped Mr. Burton. Only after this initial stop did The Officer indicate that Mr. Burton had violated any traffic laws. Because objective, probable cause did not foster The Officer's traffic stop, it is solely pretextual and is illegal as a result. This Court should suppress all evidence obtained due to an illegal stop,

**B.** **The Officer violated Mr. Burton's Fifth Amendment rights when he conducted a custodial interrogation without reading Mr. Burton his *Miranda* rights.**

The Fifth Amendment to the United States Constitution protects a person from being "compelled in any criminal case to be a witness against himself" and states that each person shall not "be deprived of life, liberty, or property, without due process of law." The Fifth Amendment applies to the states by virtue of the Fourteenth Amendment. *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (citing *Malloy v. Hogan*, 378 U.S. 1 (1964)). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held as follows:

> When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege.

*Id.* at 478-79. In order to safeguard the privilege against self-incrimination, the Supreme Court mandated that a suspect be advised prior to questioning of his right to remain silent, that anything he says can be used against him in a court of law, that he has the right to an attorney,

and that if he cannot afford an attorney, one will be appointed to him prior to questioning. *Id.* at 479. The *Miranda* warning-based approach to determining the admissibility of statements is deeply rooted in the United States constitution. *Dickerson v. United States*, 530 U.S. 428 (2000).

Custodial interrogations trigger the need for law enforcement to issue the *Miranda* warnings to the accused. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). An individual is in custody for *Miranda* purposes when, under the totality of the circumstance, he does not objectively believe that he may leave. *Howes v. Field*, 565 U.S. 499, 509 (2012). An interrogation can include either the express questioning of the accused or words or actions that are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). A custodial interrogation occurs when a law enforcement officer initiates an interrogation after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda*, 384 U.S. at 444.

The Officer placed Mr. Burton into custody as soon as he handcuffed Mr. Burton. Here, Mr. Burton, with his hands behind his back and under police scrutiny, was objectively not free to get back into his truck and leave the scene. In addition, The Officer asked Mr. Burton a very direct question: did he "have anything on him or in the truck?" Because The Officer both had Mr. Burton in his custody and asked a direct question of an incriminating nature, The Officer should have read Mr. Burton's *Miranda* rights in order to ensure that Mr. Burton knew what he waived in answering the questions.

While evidence subject to the exclusionary rule may still be admitted due to inevitable discovery, that is not the case here. If the government can show by a preponderance of the evidence that illegally obtained evidence would have been lawfully found despite illegal action, the evidence will be admitted. *Nix v. Williams*, 467 U.S. 431, 444 (1984). But for his statement

to The Officer, Mr. Burton would not have been searched and arrested as a result. None of the ticketed violations in this case are arrestable offenses. Although this case not comes before the Federal Court in the Northern District of Ohio, Eastern Division, The Officer acted as an agent of the State of Ohio when he stopped Mr. Burton. The Officer cited Mr. Burton for three offenses: a window tint violation as stated in Ohio Revised Code § 4513.241, a minor misdemeanor; a change of course violation in violation of Cleveland Municipal Ordinance § 431.14, a minor misdemeanor; and failure to wear a seatbelt, a violation of Cleveland Municipal Ordinance § 467.27(B)(1), which is punishable only by a $30 fine.

In Ohio, an officer is not permitted to arrest an individual upon the commission of a minor misdemeanor. See *State v. Brown*, 99 Ohio St. 3d 323, 327 (2003) (while the United States Constitution does not protect against arrest for a minor misdemeanor, Article I Section 14 of the Ohio State Constitution does); *State v. Jones*, 88 Ohio St. 3d 430, 440 (200) (overturned to the extent that that the Fourth Amendment protects against arrest for a minor misdemeanor). Since The Officer is a Cleveland police officer, he is bound by Ohio law. This case's transfer to Federal Court does not posthumously give The Officer the right to violate the Ohio Constitution.

An officer may arrest an individual who commits a minor misdemeanor if the individual fails to disclose personal information after the officer requests it. R.C. § 2935.26(A)(2). But in this case, Mr. Burton provided The Officer with a valid driver's license as soon as The Officer requested it. For this reason, Mr. Burton could not have been arrested and searched incident to that arrest, and the firearm on his person would not have been inevitably discovered through legal means.

Since The Officer illegally obtained the statement that Mr. Burton was armed, the Court should suppress the subsequent search and discovery of a firearm. This evidence could not have been discovered through legal means, and is thus subject to the exclusionary rule.

**C.** **Like the search of Mr. Burton's person, the warrantless search of Mr. Burton's vehicle was also unlawful, as The Officer possessed no valid exception to the warrant requirement.**

For both of the above-argued reasons, The Officer's search of Mr. Burton's Dodge Ram was unconstitutional, and the items found during that search should be suppressed. First, The Officer did not have probable cause— or even reasonable, articulable suspicion— to believe that Mr. Burton had committed a crime, and that evidence of that crime would be found within the vehicle. Second, even if The Officer could have arrested Mr. Burton, a search of Mr. Burton's vehicle would have been prohibited by *Arizona v. Gant.* For those reasons, the evidence found inside Mr. Burton's truck should be suppressed.

1. The automobile exception to the warrant requirement only applies when an officer has probable cause that the vehicle to be searched contains evidence of a crime, and The Officer did not possess the requisite probable cause.

Due to "the pervasive regulation of vehicles capable of traveling on the public highways," courts now recognize an automobile exception to the warrant requirement. *California v. Carney*, 471 U.S. 386, 390 (1985). An officer may search a vehicle without a warrant as long as he has probable cause to do so. *Collins v. Virginia*, 138 S. Ct. 1663 (2018). To possess the requisite probable cause for a search, an officer but believe that there is evidence of crime within the vehicle to be searched or its inner compartments. *California v. Acevedo*, 500 U.S. 565, 569 (1991).

In *Acevedo*, after tracking a package containing marijuana through the United States Postal Service, police stopped the defendant, who had carried a similar-looking package to his

car and driven away. The United States Supreme Court held that the officers had probable cause to search both the defendant's car and the package, largely based on the extensive investigation completed by the officers and their familiarity with the marijuana in question. *Acevedo* at 581. Because of this, the warrantless search was valid.

The Officer, however, did not have probable cause to believe evidence of a crime could be found in Mr. Burton's truck. Based only off of what appeared to be a hand-to-hand transaction, The Officer did not possess even the requisite suspicion to perform an investigative stop. Because of this, he fails to meet the higher burden of probable cause. In addition, even if the ticketed offenses were arrestable, they are crimes without evidence, and The Officer could not reasonably have believed that he would find evidence of these crimes within the vehicle. Because of this, this Court should suppress the evidence found inside Mr. Burton's truck.

2.  <u>Because The Officer could not have reasonably believed that Mr. Burton would be able to reach anything inside his car after he was arrested</u>

When an individual is arrested, the arresting officers may conduct a search of the area immediately around that person to ensure that they are safe and that evidence will not be destroyed. *Chimel v. California*, 395 U.S. 752, 763 (1969). This allowance, however, does not extend to the surrounding area, such as other rooms of a building. *Chimel*, at 763. In addition, police officers may return to an individual's automobile and search it without a warrant after arresting that person, only if (1) the officer reasonably believes that evidence of the offense *for which the defendant was arrested* is inside; or (2) the automobile is within the defendant's control. *Arizona v. Gant*, 556 U.S. 332, 344 (2009).

Neither of the allowances mad in *Gant* apply to this case. First, as stated above, the ticketed offenses, while non-arrestable, do not produce physical evidence. Although Mr. Burton also indicated that he carried a firearm in violation of the prohibition of felons possessing

firearms, nothing in this admission indicated that there may be *more* firearms inside his truck. As The Officer reports, after asking Mr. Burton if there was anything on him, Mr. Burton responded, "Yes, a weapon," and signaled to his pocket." In no way does this indicate further evidence of the same crime within Mr. Burton's truck, and the first exception in *Gant* is thus ineffective. Second, during this interaction (but before Mr. Burton's arrest), The Officer had already handcuffed Mr. Burton. As a result, the space within Mr. Burton's control was incredibly limited. Even if he drove a smaller vehicle than a Dodge Ram truck, it would not have been possible for Mr. Burton to reach inside, while wearing handcuffs, and either produce a weapon or destroy evidence against him. For this reason, the second exception to *Gant* also fails. Because of this, the evidence found inside Mr. Burton's vehicle should be suppressed.

## III.    CONCLUSION

On December 10, 2018, Officer The Officer overreached the constitutional boundaries of appropriate police behavior. The Officer stopped a vehicle without either the reasonable, articulable suspicion necessary to perform an investigative stop or probable cause that a traffic violation had occurred. The Officer placed Mr. Burton into police custody and interrogated him without first informing Mr. Burton of his *Miranda* rights. This interrogation resulted in The Officer's discovery of a firearm on Mr. Burton's person, evidence he would not otherwise have found. The Officer then proceeded to search Mr. Burton's vehicle without a warrant, and without an applicable exception to the warrant requirement. The Officer repeatedly and flagrantly violated Mr. Burtons Fourth and Fifth Amendment rights under the United States Constitution, and all evidence against Mr. Burton obtained as a result must be suppressed.

WHEREFORE, Mr. Burton respectfully moves this Honorable Court for an ORDER suppressing all evidence obtained incident to the unlawful stop, seizure, and search of Mr. Burton, as it is the õfruit of the poisonous tree.ö *Wong Sun v. United States*, 371 U.S. 471 (1963).

Respectfully submitted,

*/s/ Joseph P. Morse*
JOSEPH P. MORSE (0073298)
Attorney for Toriono D. Burton

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true an accurate copy of the foregoing Motion and Memorandum was forwarded to United States Attorney Justin E. Herdman and/or a member of his staff by means of the electronic filing system.

*/s/ Joseph P. Morse*
JOSEPH P. MORSE (0073298)
Attorney for Toriono D. Burton