IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR110 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| TORIONO BURTON, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION TO SUPPRESS |

Now comes the United States of America, by and through its counsel, Justin E. Herdman,

United States Attorney, and Danielle K. Angeli and Margaret A. Kane, Assistant United States

Attorneys, and respectfully submits this response in opposition to Defendant Toriono Burton's

("Burton") Motion to Suppress.  (R. 15: Motion to Suppress, PageID 56-69).  For the reasons set

forth in the attached memorandum, the United States respectfully requests that the Court deny

Burton's Motion to Suppress.


Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:    /s/ Danielle K. Angeli
       Danielle K. Angeli (MI: P81362)
       Margaret A. Kane  (OH:  0082084)
       Assistant United States Attorneys
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, Ohio 44113-1852
       (216) 622-3875/ (216) 622-3642
       (216) 522-8354 (facsimile)
       Danielle.Angeli@usdoj.gov
       Margaret.Kane@usdoj.gov

## FACTUAL BACKGROUND

On December 10, 2018, while conducting surveillance, Detective Yasenchack of the Cleveland Police Department observed a suspected hand-to-hand drug transaction.  That afternoon, Detective Yasenchack parked his unmarked police car on Thames Avenue, a side street off East 152nd Street in Cleveland, Ohio, near a BP gas station where drug sales often occur.  Typically drug dealers and customers meet in the BP parking lot, and then go to a nearby side street, Thames Avenue, to complete the drug sale.

While parked on the side street, the detective observed a black Dodge Ram truck pull up and park on the south side of the street, approximately three to four houses away.  He also saw a black male walk up to the truck from a nearby house.  The man had his hand in his pocket and the detective saw a large bulge that, based on training and experience, was consistent with a brick of money or drugs in his right sweatshirt pocket.  The man then opened the truck's front passenger door.  Although the truck's windows were darkly tinted, the detective could see the silhouettes of the two men inside the truck but could not see their hands.  The man then exited the truck and returned to the home.  After leaving the truck, the detective no longer saw the bulge in the man's pocket.  Detective Yasenchack also noticed that the truck's windows appeared to have an illegal window tint.

The truck drove off, and the detective followed.  He observed the truck change lanes without using a turn signal, and initiated a traffic stop approximately one mile away, at Ivanhoe Road and Halliday Avenue.  After the truck stopped, Detective Yasenchack noticed that the driver, Toriono Burton, began to move around, so he requested assistance.  The detective approached the driver-side window and asked for Burton's license and insurance.  Burton was the only person inside the truck.  As Burton retrieved the documents, he was visibly nervous and

his hands were shaking. Additionally, his insurance card was expired. Detective Yasenchack returned to his car to run Burton's information through the law enforcement database, which noted that Burton had weapon and drug-trafficking convictions, and waited for assistance.

Another officer arrived shortly, and the two officers approached the truck again. Detective Yasenchack instructed Burton to exit the truck to sign the traffic citation, which Burton did. Detective Yasenchack told Burton that he stopped Burton for a window-tint violation, and asked Burton if there was anything inside the truck that the officers should be concerned about. Burton responded no. For officer safety, Detective Yasenchack detained Burton in handcuffs near the rear of the truck and told Burton he was being detained for his activity on Darwin Avenue.[1] Burton responded that he did not know where Darwin Avenue was located. Also for officer safety, Detective Yasenchack asked Burton if he had anything on him. Burton responded that he had a weapon and motioned to his pocket. Detective Yasenchack confirmed with Burton that he could not have a firearm with his prior record, and Burton agreed. Inside Burton's right jacket pocket, officers found a loaded .40 caliber Smith and Wesson M&P pistol with seven rounds of ammunition. After finding the firearm, Detective Yasenchack advised Burton that he was under arrest and provided *Miranda* warnings.

Officers conducted an inventory search before towing the truck, pursuant to Cleveland Police Department policy, and found a bundle of cash in the center console, totaling $4,000, and a cell phone. The money was stacked in a brick shape, similar to what Detective Yasenchack observed on the unknown male on Thames Avenue. Officers also tested the window tint and

---

[1] Detective Yasenchack mistakenly stated Darwin Avenue instead of Thames Avenue, where he saw the suspected hand-to-hand transaction.

confirmed that it measured 16% light transmittance, an illegal amount.  Burton received a

citation for window-tint, no-signal, and seatbelt violations.  Officers transported Burton to the

county jail for the weapon violation, and towed the truck.  *See* (Ex. 1: Cleveland Police Report).[2]

### CASE STATEMENT

On February 28, 2019, a federal grand jury returned a one-count indictment against

Toriono Burton for being a felon in possession of a firearm and ammunition, in violation of 18

U.S.C. § 922(g)(1).  On June 19, 2019, Burton filed a motion to suppress, contesting the

validity of the traffic stop and his admission of the weapon.  (R. 15: Mot. to Suppress, PageID

56-69).  The Court should deny Burton's motion for several reasons.  First, Detective

Yasenchack had probable cause to initiate the traffic stop, given Burton's window-tint and no-

signal violations.  Additionally, Detective Yasenchack had reasonable, articulable suspicion to

conduct an investigatory stop based on the suspected hand-to-hand drug transaction he

observed.  For officer safety, Detective Yasenchack lawfully instructed Burton to exit the

truck, detained him, and asked whether Burton had anything on him.  Thus, the traffic stop and

its scope were reasonable.  Moreover, when Detective Yasenchack asked Burton if he had

anything on him, Burton was not in custody, so *Miranda* warnings were not required.

Alternatively, the public-safety exception to *Miranda* applies.  Therefore, the Court should

deny Burton's motion to suppress his statements, the firearm, and the evidence in Burton's

truck.

---

[2]   The United States will also provide the Court with a disk containing Detective Yasenchack
and the assisting officer's body-camera videos.

<u>**MEMORANDUM**</u>

**A. Legal Standard**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. An automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). Because a typical traffic stop occurs without a warrant, and warrantless searches are presumptively unconstitutional, the United States bears the burden of establishing that a warrantless search or seizure is reasonable under the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971). At the outset, the United States must show that the initial stop was justified at its inception. *Delaware v. Prouse*, 440 U.S. 648, 658 (1979); *see United States v. Matlock*, 415 U.S. 164, 178 (1974) (controlling burden of proof at suppression hearing is a preponderance of the evidence). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810 (citing *Prouse*, 440 U.S. at 658 and *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).

Additionally, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "An ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* principles." *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006) (citing *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). "[I]nvestigative detentions involving suspects in vehicles are especially fraught with

danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047 (1983). Indeed, "a significant percentage of murders of police officers occur[ ] when the officers are making traffic stops." *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973). Because officer safety is "both [a] legitimate and weighty" interest, during a traffic stop, officers may order persons out of an automobile and may conduct a pat-down for weapons if there is a reasonable belief that they are armed and dangerous. *Mimms*, 434 U.S. at 110; *see also Long*, 463 U.S. at 1047-48 (discussing *Mimms*); *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008). "Moreover, the officer may ask the detainee a moderate number of questions to determine [a person's] identity and to try to obtain information confirming or dispelling the officer's suspicions." *Campbell*, 549 F.3d at 372 (internal citations and quotations omitted).

Likewise, "'[a]n officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity would be well within the bounds of the initial stop.'" *Id.* at 373 (quoting *United States v. Shank*, 543 F.3d 309, 311 (6th Cir. 2008)). For example, an officer may ask a driver to step out of the car and pat him down for weapons in an effort to verify his identity, to check for outstanding warrants, and to protect the officer and others. *Id.* Thus, the Court must determine whether a reasonably prudent person in the circumstances would be warranted in believing that his safety or that of others was in danger. *Id.* (citing *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007)).

Additionally, the Court must determine whether, based the totality of the circumstances, law enforcement had a "particularized and objective basis" for suspecting criminal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 272 (2002); *United States v. Orsolini*, 300 F.3d 724, 728-29 (6th Cir. 2002). In order words, it must "determine whether the individual factors, taken as a

whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *Perez*, 440 F.3d at 371.

"This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (internal citation and quotation marks omitted). Relevant circumstances include, *inter alia*, the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred. *Id*. at 383. Although an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime, officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. *Id.* (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Courts give "due weight to the factual inferences" drawn by law enforcement officers. *Arvizu*, 534 U.S. at 277.

The Fifth Amendment provides protection against self-incrimination. U.S. CONST. amend. V. Specifically, *Miranda* warnings are required before a suspect's custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Mere detentions, however, do not require *Miranda* warnings. For example, an officer may ask a detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions, but the detainee is not obliged to respond. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

Traffic stops differ significantly from the coercive environment of stationhouse interrogation. "Two features of an ordinary traffic stop mitigate the danger that a person

questioned will be induced 'to speak where he would not otherwise do so freely[.]'" *Id.* at 437

(quoting *Miranda*, 384 U.S. at 467). First, detention of a motorist for a traffic stop is

presumptively temporary and brief. *See id.* at 437-38. Second, circumstances associated with

the typical traffic stop are not such that the motorist feels completely at the mercy of the police.

*Id.* at 438. A traffic stop is more analogous to a *Terry* stop than a formal arrest. *Id.* at 439.

Thus, given the "comparatively nonthreatening character of detentions of [*Terry* stops]" and the

"similarly noncoercive aspect of ordinary traffic stops[,]" those who are "temporarily detained

pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id.* at 440.

**B.** **Detective Yasenchack Had Probable Cause to Initiate the Stop for Traffic Violations.**

Detective Yasenchack saw two traffic violations—window tint and no signal during a

lane change—which provided probable cause to stop Burton's truck. Detective Yasenchack

noticed that the truck's window tint was too dark, in violation of Ohio Revised Code § 4513.241

and Cleveland Municipal Code § 15-140. When Detective Yasenchack followed Burton's truck,

he saw Burton change lanes without using a traffic signal, in violation of Ohio Revised Code

§ 4511.39—a second violation. Because Detective Yasenchack had at least probable cause for

the traffic violations, the stop was reasonable at its inception. *See Whren*, 517 U.S. at 810 (citing

*Prouse*, 440 U.S. at 658 and *Mimms*, 434 U.S. at 109).

Burton's argument that Detective Yasenchack lacked probable cause to initiate the traffic

stop is meritless. Indeed, Burton acknowledges that *Whren* prevents the Court from engaging in

a subjective-intent inquiry. *See* (R. 15: Suppression Mot., PageID 62). During the traffic stop,

Detective Yasenchack told Burton he was being stopped for a window-tint violation, and his

windows measured 16% light transmittance. In Cleveland, it is unlawful to have a window tint

with less than 35% light transmittance. Cleveland Mun. Code § 15-140. Additionally, Detective

Yasenchack wrote Burton a citation for a window-tint violation, a no-signal violation, and no seatbelt. (Ex. 2: Citation). Detective Yasenchack had objective probable cause to believe that Burton committed a traffic violation, which is all that he needed to lawfully stop Burton's truck. *See United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (holding that so long as an officer has probable cause to believe that a traffic stop has occurred or was occurring, the stop was lawful and does not violate the Fourth Amendment). Not only do these violations provide probable cause to initiate a stop, *see also United States v. Blair*, 524 F.3d 740, 748-49 (6th Cir. 2008), Detective Yasenchack could have arrested Burton without a warrant for these violations. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense [including a fine-only, misdemeanor traffic violation] in his presence, he may, without violating the Fourth Amendment, arrest the offender."). In fact, officers may stop a car even when they have reasonable suspicion to believe that a *civil* traffic violation has occurred. *United States v. Sanford*, 476 F.3d 391, 394-95 (6th Cir. 2007) (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004)) (emphasis added). Because Detective Yasenchack had at least probable cause based on the window-tint and no-signal violations to initiate the stop, it was reasonable at its inception.

Relatedly, Burton's assertion that Detective Yasenchack stopped Burton before noticing the traffic violations is unsupported. Detective Yasenchack could not have noticed a no-signal violation *after* he stopped Burton's truck—and Burton does not dispute the traffic violations cited in the ticket. As discussed *supra*, *Whren* prevents this Court from looking at Detective Yasenchack's subjective intent where there are objective grounds amounting to probable cause to initiate the stop. Detective Yasenchack informed Burton that he was stopped for a window-tint

violation, the police report notes the three traffic violations, including window-tint and no-signal violations, *see* (Ex. 1: Police Report, 5), and Burton received a citation with the three violations. *See* (Ex. 2: Citation). As such, Burton's argument that the traffic stop was pretextual and illegal as a result is meritless. *See* (R. 15: Suppression Mot., PageID 63). Because Detective Yasenchack had objective probable cause of traffic violations to stop Burton's truck, the stop was lawful at its inception.

      **C.     In Any Event, Detective Yasenchack Had Reasonable Suspicion to Conduct An Investigatory Stop.**

Even without the traffic violations, Detective Yasenchack had reasonable, articulable suspicion that Burton was involved in drug activity to conduct an investigatory *Terry* stop. *See Perez*, 440 F.3d at 370 ("An ordinary traffic stop is like an investigative detention, the scope of which are governed by *Terry* principles."). Detective Yasenchack saw Burton involved in behavior consistent with a hand-to-hand drug transaction. He watched Burton's truck pull up in an area known for drug activity, and a person left a nearby house with a brick-shaped object in his pocket. The person got into Burton's truck, and after a few seconds, left, but Detective Yasenchack no longer saw the brick-shaped object in his pocket. In Detective Yasenchack's training and experience, this behavior was consistent with a hand-to-hand drug transaction. Thus, based on the totality of the circumstances, the detective also had reasonable suspicion to conduct an investigatory *Terry* stop. *Sokolow*, 490 U.S. at 7.

Burton's argument that a hand-to-hand drug transaction alone does not create reasonable suspicion ignores Detective Yasenchack's training and experience. Courts allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Arvizu*, 534 U.S. at 273; *see also United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008) (courts must "give due weight to the

officers' factual inferences, as their specialized training and experiences allow them to draw inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (internal citations and quotations omitted). Not only did Detective Yasenchack know that the area had a lot of crime, he knew that specific street was known for drug trafficking. His observations of the suspected hand-to-hand drug transactions coupled with his training, knowledge, and experience supports his reasonable suspicion of criminal activity. *See United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (affirming district court's denial of suppression motion where officer had reasonable suspicion that the defendant was engaged in criminal activity based upon hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high-crime area); *cf. Wardlow*, 528 U.S. at 124 (defendant's unprovoked flight and presence in high-crime area sufficient for reasonable suspicion).

**D.     Detective Yasenchack Lawfully Asked Burton to Step Out of the Truck and Questioned Burton for Officer Safety.**

For officer safety, Detective Yasenchack lawfully instructed Burton to exit the truck to sign the citation. He made the assessment, based on the facts known to him and his experience, that it was safest to conduct the traffic stop with Burton outside of his truck. A reasonably prudent person in Detective Yasenchack's shoes would be warranted in believing that his safety or that of others was in danger. *Campbell*, 549 F.3d at 372.

An officer may make a brief investigatory stop if the officer has reasonable suspicion of criminal activity. *Arvizu*, 534 U.S. at 273. During the course of a traffic stop, officers may ask or instruct occupants out of the car for officer safety. *See, e.g, Mimms*, 434 U.S. at 106; *United States v. Street*, 614 F.3d 228, 232-33 (6th Cir. 2014). The "Fourth Amendment permits officers to conduct an otherwise-legitimate stop on their own terms—whether by keeping the driver (and

occupants) in the car or by asking them to exit the car[. . .] depending on what they perceive as safer." *Street*, 614 F.3d at 232 (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997) and *Mimms*, 434 U.S. at 111). Asking someone to step out a vehicle—what is at most a "mere inconvenience"—"cannot prevail when balanced against legitimate concerns for the officer's safety." *Mimms*, 434 U.S. at 111. Here, based on the totality of the circumstances—the suspected hand-to-hand drug transaction, high-crime area, Burton's moving around and nervousness, and Burton's prior convictions for weapons and drug-trafficking—Detective Yasenchack lawfully instructed Burton to step out of the truck for officer safety.

Not only did Detective Yasencheck have reasonable suspicion of criminal activity, he also had reasonable suspicion to believe that Burton may be armed and dangerous. Under the totality of the circumstances, Detective Yasenchack had a "'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18) (1981)). Detective Yasenchack saw Burton engage in a suspected hand-to-hand drug transaction. Based on his training and experience, drug traffickers typically have weapons for their protection. *See United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006).

Additionally, Detective Yasenchack observed Burton's nervous behavior and movements, knew about his prior convictions for weapons and drug trafficking, and was familiar with the high-crime area. As such, Detective Yasenchack reasonably believed that Burton may be armed and dangerous, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), so he could lawfully detain Burton and conduct a pat-down for weapons. *Terry*, 392 U.S. at 27 (holding that an officer may search for weapons for the officer's protection where an officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime).

**E.      Burton Was Not in Custody When Detective Yasenchack Asked Him if He Had Weapons on Him, So *Miranda* Does Not Apply.**

Courts consider several factors to determine whether someone is in custody and entitled to Fifth Amendment protections:

> (1) The location of the interview;
>
> (2) the length and manner of questioning;
>
> (3) whether there was any restraint on the individual's freedom of movement; and
>
> (4) whether the individual was told he or she did not need to answer the questions.

*United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (internal citations omitted).  This Court must determine whether Burton's "freedom of action [was] curtailed to a degree associated with a formal arrest."  *Berkemer*, 468 U.S. at 440.

Here, the questioning occurred on the side of the road, outside of Burton's truck, which weighs in favor of finding that Burton was not in custody.  *See United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).  Similarly, the questioning was short—Detective Yasenchack asked if there was anything in the car that they should be worried about and if Burton had anything on him.  And it occurred as Detective Yasenchack handcuffed Burton, just before he was about to conduct a pat-down for weapons.  Thus, this factor also weighs in favor of finding that Burton was not in custody.

The third factor—restraint of the individual's freedom of movement—identifies "only a necessary and not a sufficient condition for *Miranda* custody."  *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010).  Traffic stops are unique:  "[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop . . . does not constitute *Miranda* custody."  *Id.* Although officers temporarily detained Burton for an investigatory stop, all *Terry* stops involve a

similar, temporary restraint on movement. Relatedly, "being placed in handcuffs is not dispositive of the custody inquiry, particularly where officer safety is at issue[.]" *United States v. Newton*, 181 F. Supp. 2d 157, 174-75 (E.D.N.Y. 2002); *see also United States v. Jones*, Case No. 3:06-CR-149, 2007 WL 3047120, at *1 (E.D. Tenn. Oct. 16, 2007) (defendant not in custody for purposes of *Miranda* warnings where defendant was handcuffed, subjected to a *Terry* pat-down, and officer questioned defendant about unusual item in pocket).

Here, Detective Yasenchack lawfully instructed Burton to exit the car to sign the citation. He did not use force, have his weapon displayed, threaten Burton, or raise his voice. As discussed *supra*, Detective Yasenchack had reasonable, articulable suspicion that Burton may be armed and dangerous. Detective Yasenchack walked with Burton to the back of his truck and told him that he was being detained for activity on Darwin.[3] For officer safety, he determined that it was safer to detain Burton in handcuffs before conducting a pat-down for weapons. As he was handcuffed, Detective Yasenchack asked if Burton had anything on him for officer safety. Burton responded that he had a weapon on him. The questioning was very brief, related to officer safety, and occurred just before Detective Yasenchack was about to conduct a pat-down. Although in handcuffs, Burton was not "in custody" for *Miranda* purposes—Burton did not have to respond to Detective Yasenchack's question. *See Berkemer*, 468 U.S. at 439. Detective Yasenchack's questioning was well within the "moderate number of questions" he may ask "to try to obtain information confirming or dispelling" his suspicions that Burton was armed and dangerous. *Id.* At this point, Detective Yasenchack was investigating to determine whether Burton had a weapon and posed a danger to the officers. Although Burton's freedom of

---

[3]     Detective Yasenchack referred to the wrong street name. He witnessed the suspected hand-to-hand drug transaction on Thames Avenue.

movement was temporarily restricted, the restriction and questioning was aimed at officer safety, so this factor should weigh in favor of finding that Burton was not in custody.

Burton's assertion that he was in custody as soon as he was handcuffed is unavailing, and Burton fails to cite a single case in support of this assertion. Indeed, an officer may detain a person in handcuffs without turning the *Terry* stop into a custodial environment. *Cf. United States v. Atchley*, 474 F.3d 840, 848 (6th Cir. 2007) (during a *Terry* stop, a police officer may handcuff the suspect if the officer fears for his safety, and mere handcuffing does not transform the stop into an arrest); *Houston v. Does*, 174 F.3d 809, 814 (6th Cir. 1999) (noting that when an officer fears for his safety, the use of handcuffs does not exceed the bounds of a *Terry* stop nor does it transform the stop to a formal arrest); *see also United States v. Fornia-Castillo*, 408 F.3d 52, 64-65 (1st Cir. 2005) (stating that "the use of handcuffs" during *Terry* stop did not necessarily lead to a finding of custody and approving "reasonable safety concerns" animating "the officer's decision to use handcuffs")); *United States v. Latz*, 162 F. App'x 113, 118 (3d Cir. 2005) (affirming denial of suppression motion when suspect "had been placed on his porch by three police officers, handcuffed, and then moved to his couch" before giving an un-*Mirandized* statement); *United States v. Matcovich*, 522 F. App'x 850, 852 (11th Cir. 2013) (noncustodial environment where officers handcuffed residents of the searched home, told the suspects that they were not under arrest, removed the handcuffs shortly, and retrieved cigarettes and a snack for the suspects). Therefore, the fact that officers handcuffed Burton does not, by itself, create a custodial environment.

Finally, Detective Yasenchack did not tell Burton he did not have to answer questions. Detective Yasenchack did, however, explain to Burton that he was being detained. He was not under arrest, and he did not have to respond to Detective Yasenchack's questions. *See Berkemer*,

468 U.S. at 439. Balancing these factors confirms that Burton was not in custody, so the Fifth Amendment did not require Detective Yasenchack to provide *Miranda* warnings before questioning Burton about whether he was armed. Accordingly, the Court should not suppress Burton's statement that he had a weapon in his pocket or the recovered firearm.

Alternatively, even if Burton were in custody, the public-safety exception to *Miranda* applies, so Detective Yasenchack need not advise Burton of his *Miranda* rights before questioning him related to officer safety. When officers ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect," they need not provide *Miranda* warnings. *New York v. Quarles*, 467 U.S. 649, 659 (1984). "[T]he public safety exception applies 'when officers have a reasonable belief based on articulable facts that they are in danger.'" *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)). For an officer to have a reasonable belief that he is in danger, he must have reason to believe that (1) the defendant might have or recently have had a weapon and (2) that someone other than police might gain access to that weapon and inflict harm with it. *Id.*

Traffic stops are inherently dangerous, and Detective Yasenchack's reasonable, articulable suspicion that Burton may be armed and dangerous supports the application of the public-safety exception. Detective Yasenchack was about to conduct a pat-down for weapons while asking Burton if he had anything on him. Not only did he have reasonable suspicion that Burton might have a weapon, he was reasonably concerned that Burton might gain access to that weapon and inflict harm. Further, "[t]he fact that [a defendant] was in handcuffs at the time of questioning does not alter the analysis[,]" the "public safety exception . . . has long permitted questions posed to a defendant in handcuffs." *United States v. Glenn Williams*, No. 06-4134,

2008 WL 919666, at *12 (6th Cir. Apr. 4, 2008). Therefore, the public-safety exception also applies, so the Court should not suppress Burton's statements or the recovered evidence.

Moreover, Burton volunteered that he had a weapon in his pocket. The Sixth Circuit has held that such questioning is lawful, when reasonably related to the officer's safety. *See United States v. Burton*, 334 F.3d 514 (6th Cir. 2003) (officer lawfully asked driver to get out after traffic stop and asked if he had any needles for safety reasons, when driver said he had drugs, that provided probable cause for an arrest and to search the car). In *Burton*, the officer ordered the defendant to get out of the car and detained him for a traffic violation. *Id.* at 519. Immediately before beginning the pat-down, the officer asked the defendant if there was anything that he needed to know about, like needles or anything of that nature. In response, the defendant voluntarily admitted that he had marijuana in his pocket. The officer retrieved the bag of marijuana and asked if there was anything else, to which the defendant responded that he had more narcotics in his shirt pocket. The Sixth Circuit held that this questioning was reasonably related to the officer's safety and affirmed the district court's denial of the defendant's suppression motion. *Id.* at 519-20.

Similarly here, Detective Yasenchack instructed Burton to get out of the car and detained him. Immediately before Detective Yasenchack was about to conduct a pat-down, he asked Burton if he had anything on him to confirm or dispel his suspicion that Burton may be armed and dangerous. Thus, like in *Burton*, Detective Yasenchack's lawfully questioned Burton for officer safety before conducting a pat-down.

Finally, even if the Court finds that Burton was in custody, it should not suppress the firearm or any evidence found in Burton's truck under the inevitable-discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 444 (1984) (declining to suppress evidence that inevitably would have

been discovered by lawful means).  First, Detective Yasenchack could have lawfully arrested Burton for the traffic violations, and would have discovered the firearm during a search incident to arrest.  *See Atwater*, 532 U.S. at 354.  Burton's argument that, under Ohio law, he could not be arrested for a minor misdemeanor is unavailing.  Indeed, the Supreme Court specifically rejected a similar argument in *Atwater*.  *See id.*, 532 U.S. at 354.  In that case, the officer initiated a traffic stop for misdemeanor seatbelt violations, the penalties for which are a fine of at least $25 up to $50.  *Id.* at 323-24.  The officer arrested the driver for these violations, and the defendant challenged the officer's ability to arrest her for these minor criminal violations.  *Id.* at 324.  The Supreme Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Id.* at 354.  Thus, as discussed *supra*, Detective Yasenchack had at least probable cause that Burton committed the traffic violations in his presence, so he could have lawfully arrested Burton for those violations.  Further, his claim that he was arrested in violation of the Ohio constitution is not relevant to the Court's Fourth Amendment analysis.

Additionally, Detective Yasenchack could have lawfully conducted a pat-down for weapons under *Terry*.  During the pat-down, he would have felt the firearm in Burton's pocket, and under the plain-feel doctrine, he could have then searched Burton for the firearm.  *See United States v. Pacheco*, 841 F.3d 384, 394-95 (6th Cir. 2016).  Therefore, the Court should deny Burton's motion to suppress the firearm because Detective Yasenchack would have inevitably discovered the firearm, either as a search incident to arrest for the traffic violations or during the pat-down.

After Burton's arrest, the Cleveland Police Department towed Burton's truck because he was the only person in the vehicle, pursuant to Cleveland Police Department's policy. Before towing Burton's truck, officers conducted an inventory search—a "well-established exception to the warrant requirement." *Illinois v. Lafayette*, 462 U.S. 640, 646-47 (1983); *see also United States v. Hurst*, 228 F.3d 751, 758 (6th Cir 2000); *Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (holding that, after lawfully taking custody of a vehicle, officers may conduct an inventory search, which serves "to protect an owner's property in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger"); *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998). Burton's argument that, but for Burton's admission about the firearm, officers could not search Burton's truck is unavailing. As discussed *supra*, Detective Yasenchack could have arrested Burton or conducted a pat-down for weapons. After finding the firearm, he then had probable cause to arrest Burton. Because Burton was the only person in the car, his truck would have been towed, and the inventory-search exception would apply. Therefore, the Court also should deny Burton's motion to exclude the evidence found in his truck.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Honorable

Court deny Burton's Motion to Suppress.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Danielle K. Angeli
Danielle K. Angeli (MI: P81362)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852
(216) 622-3875
(216) 522-8354 (facsimile)
Danielle.Angeli@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Danielle K. Angeli
Danielle K. Angeli
Assistant United States Attorney