IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR110 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| TORIONO BURTON, | ) | UNITED STATES' TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its counsel, Justine E. Herdman, United States Attorney, and Margaret A. Kane and Danielle K. Angeli, Assistant United States Attorneys, respectfully submit the following trial brief in accordance with this Court's Trial Order.

**I.  CONTROLLING LAW**

The Indictment charges Defendant Toriono Burton with possessing a firearm after being convicted of an offense punishable by imprisonment for more than one year. The relevant statute on this offense is Title 18, United States Code, Section 922(g)(1), which provides:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to … possess in or affecting commerce, any firearm or ammunition….

18 U.S.C.§ 922(g)(1). To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

> 1: That the defendant had been convicted of a crime punishable by imprisonment for more than one year and the Defendant had knowledge of this conviction;

      2:  That the defendant, following his conviction, knowingly possessed the firearm specified in the Indictment; and,

      3:  That the specified firearm crossed a state line prior to the alleged possession.

Sixth Circuit Pattern Jury Instruction No. 12.01, 2017 Edition; *United States v. Kincaide*, 145 F.3d 772, 782 (6th Cir. 1998).

**II.**  **ANTICIPATED EVIDENTIARY ISSUES**

    A.  **STATEMENT OF THE FACTS**

If this case proceeds to trial, the United States intends to offer evidence of the following:

On December 10, 2018, at approximately 2:00 p.m., Detective Yasenchack of the Cleveland Police Department Fifth District Vice Department was conducting surveillance on Thames Avenue. This side street is off of East 152nd Street in the City of Cleveland and is near a BP gas station where drug sales often occur. Typically drug dealers and customers meet in the BP parking lot, and then go to a nearby side street, Thames Avenue, to complete the drug sale. Detective Yasenchack began conducting surveillance at this BP gas station and then traveled to Thames Avenue. He was driving a Chevrolet Impala unmarked vehicle which is equipped with a discrete light bar and sirens.

While parked on the side street, the detective observed a black Dodge Ram truck pull up and park on the south side of the street, approximately three to four houses away. He also saw a black male walk up to the truck from a nearby house. The man had his hand in his pocket and the detective saw a large bulge that, based on training and experience, was consistent with a brick of money or drugs in his right sweatshirt pocket. The man then opened the truck's front passenger door. Although the truck's windows were darkly tinted, the detective could see the silhouettes of the two men inside the truck but could not see their hands. The man then exited the truck and returned to the home. After leaving the truck, the detective no longer saw the bulge

in the man's pocket.  Detective Yasenchack also noticed that the truck's windows appeared to have an illegal window tint.

The truck drove off, and the detective followed.  He observed the truck change lanes without using a turn signal, and initiated a traffic stop approximately one mile away, at Ivanhoe Road and Halliday Avenue.  After the truck stopped, Detective Yasenchack noticed that the driver, Toriono Burton, began to move around, so he requested assistance.  The detective approached the driver-side window and asked for Burton's license and insurance.  Burton was the only person inside the truck.  As Burton retrieved the documents, he was visibly nervous and his hands were shaking.  Additionally, his insurance card was expired.  Detective Yasenchack returned to his car to run Burton's information through the law enforcement database, which noted that Burton had weapon and drug-trafficking convictions, and waited for assistance.

Officer Yuhas arrived shortly to provide backup, and the two officers approached the truck again.  Detective Yasenchack instructed Burton to exit the truck to sign the traffic citation, which Burton did.  Detective Yasenchack told Burton that he stopped Burton for a window-tint violation, and asked Burton if there was anything inside the truck that the officers should be concerned about.  Burton responded no.  For officer safety, Detective Yasenchack detained Burton in handcuffs near the rear of the truck and told Burton he was being detained for his activity on Darwin Avenue.[1]  Burton responded that he did not know where Darwin Avenue was located.  Also for officer safety, Detective Yasenchack asked Burton if he had anything on him.  Burton responded that he had a weapon and motioned to his pocket.  Detective Yasenchack confirmed with Burton that he could not have a firearm with his prior record, and Burton agreed.

---

[1]  Detective Yasenchack mistakenly stated Darwin Avenue instead of Thames Avenue, where he saw the suspected hand-to-hand transaction.

3

Inside Burton's right jacket pocket, officers found a loaded .40 caliber Smith and Wesson M&P pistol with seven rounds of ammunition. After finding the firearm, Detective Yasenchack advised Burton that he was under arrest and provided *Miranda* warnings.

Officers conducted an inventory search before towing the truck, pursuant to Cleveland Police Department policy, and found a bundle of cash in the center console, totaling $4,000, and a cell phone. Burton received a citation for window-tint, no-signal, and seatbelt violations. Officers transported Burton to the county jail for the weapon violation, and towed the truck.

The weapon and ammunition recovered all had previously moved in interstate commerce. At the time of Burton's arrest he was prohibited from possessing a firearm because of prior disqualifying convictions. Certified records obtained by TFO Donald Kopchak show that Toriono Burton has convictions for: Assault on a Police Officer, on or about June 22, 2015, in Case Number CR-12-562098, in Cuyahoga County Common Pleas Court; Drug Trafficking, on or about June 22, 2015, in Case Number CR-12-562069, in Cuyahoga County Common Pleas Court; Drug Possession and Failure to Comply, on or about August 24, 2010, in Case Number CR-10-537817, in Cuyahoga County Common Pleas Court; and Drug Trafficking, on or about May 20,2010, in Case Number CR-10-533337, in Cuyahoga County Common Pleas Court. Burton had knowledge of his felony convictions.

  B. OFFICER BODY CAMERA FOOTAGE

The United States intends to introduce excerpts from Detective Yasenchack's body camera footage showing the traffic stop of the defendant. The entire video is approximately forty-five minutes but the Government only intends to show an approximate five minute clip to the jury. The entire video was provided to defense counsel in discovery. Officer Yuhas was also

4

wearing a body camera during the traffic stop and the Government may play a very brief portion of the video during trial.

The Federal Rules of Evidence require evidence to be authenticated or identified through a showing "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). By way of example, this can be satisfied with testimony from a witness with knowledge of the matter. Fed. R. Evid. 901(b)(1). A witness can identify himself or herself in a photograph and sufficiently authenticate that photograph under Rule 901. United States v. Cox, 871 F.3d 479 (6th Cir. 2017). The same is true if the witness identifies another person or a location known to the witness. Id.

Detective Yasenchack will testify and identify the body camera footage captured from his Cleveland Police Department body camera device.[2] He will testify to how the system works and when he activated his camera. He will identify himself and the other parties shown on his camera, including other responding officers and the Defendant. Detective Yasenchack has personal knowledge of the traffic stop depicted in his body camera footage as he was present when the stop occurred.

C. DEFENDANT'S SELF-SERVING EXCULPATORY STATEMENTS

It is well-settled that defendants cannot seek to introduce their own self-serving exculpatory statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing

---

[2] Officers on scene were equipped with Axon body cameras. Not all Cleveland Police are assigned or required to wear body cameras. Body cameras remain in "buffering" mode until needed. Cameras are activated in "event" mode in situations such responding to calls, interviewing witnesses, suspects, and victims. Once activated from "buffering" mode to "event" mode, the cameras record video immediately but only begin recording audio approximately 30 seconds after activation. A beeping noise occurs every few minutes to let the officer know the device is still activated. Per CPD policy, cameras are not required to be on during the entire duration of an officer's shift, they may be turned on and off.

*United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997)). Indeed, while the Federal Rules of Evidence allow the government to introduce inculpatory statements made by a defendant, the "Rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.*  Thus, while the government is permitted to introduce some or all of a defendant's statements against him as non-hearsay admissions of a party-opponent under Rule 801(d)(2), a defendant is not permitted to introduce his own statements under the same Rule.

This rule applies equally to the evidence the defendant seeks to introduce in his own case as it does to the evidence he tries to elicit through the cross-examination of witnesses.  Because the government may be introducing portions of the defendant's statements, primarily in the form of police officer body camera footage, it anticipates that the defendant may seek to introduce other portions of the video into evidence pursuant to Rule 106.  The "rule of completeness," however, does not override the prohibition from admitting self-serving, exculpatory statements. *Gallagher*, 57 Fed. Appx. at 628-29.  The "completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded." *Id.*, *quoting Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999); *see also United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982).  If the government were seeking to mislead the jury regarding the actual meaning of one of the defendant's admissions, the completeness doctrine might be implicated.  That, however, is not the case here.

D. SELF AUTHENTICATING CERTIFIED COPIES OF PUBLIC RECORDS

The United States intends to introduce certified records of the Defendant's prior convictions. Fed. R. Evid. 902(4) provides in pertinent part that "no extrinsic evidence of authenticity" is required in order to admit certified copies of public records if the copy is certified as correct by "the custodian or another person authorized to make the certification." Here each record of conviction is certified as true and accurate by the Cuyahoga County Clerk of Courts. As such the evidence of Defendant's prior convictions are admissible as self-authenticating public records. These exhibits will only be admitted should the Defendant not stipulate to his prior convictions.

### III. TRIAL DOCUMENTS

A. STIPULATIONS

The United States has submitted the following potential stipulations to defense counsel. These stipulations relate to the Defendant's prior criminal conviction and the interstate nexus element of the firearm and ammunition. The proposed stipulations are as follows:

The United States and the Defendant have agreed and stipulated that prior to the date of the crime charged in the indictment, Toriono Burton was convicted of a crime punishable under the laws of the State of Ohio by a term of imprisonment exceeding one year and the Defendant had knowledge of this conviction.

The United States and the Defendant have also agreed and stipulated that the Smith and Wesson, Model M&P40, .40 caliber semi-automatic pistol, bearing serial number LEE7670, was manufactured outside the state of Ohio, and therefore traveled in an affected interstate commerce. The United States and the Defendant have also agreed and stipulated that the seven

7

(7) rounds of .40 caliber ammunition, were manufactured outside the state of Ohio, and therefore traveled in and affected interstate commerce.

Should the Defendant not accept the above proposed stipulations, the United States will prove the elements through the necessary witnesses and documents.

B. PROPOSED JURY INSTRUCTIONS

The United States has submitted proposed jury instructions to defense counsel on the law applicable to the particular charges for which the defendant is on trial.[3] A single joint submission of jury instructions was submitted to the Court by the date required in the Court's Trial Order. (R. 19, Proposed Jury Instructions, PageID 105-146).

C. PROPOSED VOIR DIRE QUESTIONS

The United States respectfully requests that the Court direct the proposed questions submitted to the Court pursuant to the Trial Order to the jury panel during voir dire examination. (R. 20, Joint Proposed Voir Dire, PageID 148-157).

D. JOINT PROPOSED PRELIMINARY STATEMENT

The United States respectfully requests that the Court read the joint proposed preliminary statement filed with the Court pursuant to the Trial Order to the jury panel during voir dire examination. (R. 21, Joint Proposed Preliminary Statement, PageID 158-160).

---

[3] The Government and defense counsel added language in the proposed jury instructions to the first element of being a convicted felon in possession of a firearm to cover that the Defendant had knowledge of his prior conviction given the case *Rehaif v. United States*, No. 17-9560 (decided June 21, 2019), where the United States Supreme Court held that in a prosecution for possession of a firearm by a restricted person in violation of 18 U.S.C. §§ 922(g) and 924(a), the government must prove both that the defendant knew he possessed the firearm and that he knew he belonged to the relevant category of restricted persons. In the present case this requires the Government to prove that Burton knew of his status of a felon.

    D.    EXHIBIT AND WITNESS LISTS

The United States will provide its anticipated Witness List to the Court no later than three business days prior to the trial date.  The United States will also provide its proposed Exhibit List prior to trial.  The United States will mark all proposed exhibits before trial and provide to the Court in accordance with the Court's Order.

## IV. COURTROOM PROCEDURE

    A.    JENCKS MATERIAL

The United States will provide *Jencks* material to the defense in a timely manner and in accordance with this Court's Order.

    B.    SEQUESTRATION OF WITNESSES & PRESENCE OF GOVERNMENT AGENT AT TRIAL

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.  The government designates Detective Donald Kopchak with the Cleveland Police Department currently assigned to the Bureau of Alcohol, Tobacco, and Firearms (ATF) as a task-force officer (TFO) as its representative in this case to be present at counsel table throughout the trial.  Their presence in the courtroom during trial is essential to the presentation of the government's case.  *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

## V. ESTIMATED LENGTH OF TRIAL

The United States anticipates completing its case-in-chief in approximately one day.

## VI. CONCLUSION

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ *Margaret A. Kane*
Margaret A. Kane (OH: 0082084)
Danielle K. Angeli (MI: P81362)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3624/(216) 622-3875
(216) 522-7358 (facsimile)
Margaret.Kane@usdoj.gov
Danielle.Angeli@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this July 12, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ *Margaret A. Kane*
Margaret A. Kane
Assistant U.S. Attorney