PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:19CR110 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| TORIONO BURTON, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | [Resolving ECF No. 15] |

Pending before the Court is Defendant Toriono Burton's Motion to Suppress. ECF No. 15. The Government responded. ECF No. 16. The Court has been advised, having reviewed the record, parties' briefs, and applicable law and considered the testimony of witnesses, exhibits admitted into evidence, and arguments of counsel offered during the evidentiary hearing. For the reasons set forth below, Defendant's motion is granted in part.

**I.**

On December 10, 2018, Detective Yasenchack of the Cleveland Police Department parked his unmarked police car on Thames Avenue, near a BP gas station on East 152nd Street, to conduct surveillance. ECF No. 15 at PageID #: 57; ECF No. 16 at PageID #: 71. Thames Avenue is a side street off East 152nd Street in Cleveland, Ohio. ECF No. 16 at PageID #: 71. Drug dealers often meet with customers at the BP gas station and consummate the purchase on Thames Avenue. *Id.*

(1:19CR110)

Detective Yasenchack observed a black Dodge Ram truck with darkly tinted windows pull up and park on the south side of Thames Avenue, approximately three to four houses away from his unmarked police car. *Id.* Under Ohio law, it is unlawful to have a window tint with less than 50% light transmittance. Ohio Rev. Code § 4513.241; Ohio Admin. Code § 4501-41-03(A).[1] A man walked up to the truck from a nearby house. ECF No. 16 at PageID #: 71. Detective Yasenchack noticed that the man had his hand in his sweatshirt pocket. *Id.*; ECF No. 15 at PageID #: 57. There was a bulge in the pocket. ECF No. 15 at PageID #: 57; ECF No. 16 at PageID #: 71. The man opened the truck's front passenger door and entered the truck. ECF No. 16 at PageID #: 71.

Detective Yasenchack observed two silhouettes inside the truck. *Id.* Because of the truck's tinted windows, he could not see their hands. *Id.* When the man exited the truck and returned to the house, the bulge in the man's pocket was gone. *Id.*; ECF No. 15 at PageID #: 57.

The truck drove off, and Detective Yasenchack followed in his car. ECF No. 15 at PageID #: 57; ECF No. 16 at PageID #: 71. After witnessing the truck change lanes without using a turn signal, Detective Yasenchack initiated a traffic stop. ECF No. 16 at PageID #: 71. The stop was made approximately one mile away, near the intersection of Ivanhoe Road and Halliday Avenue. *Id.* Detective Yasenchack noticed the head and shoulders of Defendant, the

---

[1] The Government erroneously asserts that "[i]n Cleveland, it is unlawful to have a window tint with less than 35% light transmittance[,]" citing Cleveland Mun. Code § 15-140. ECF No. 16 at PageID #: 77. Section 15-140 is the tinting ordinance for the city of Cleveland, Tennessee. The relevant ordinance for the city of Cleveland, Ohio adopts Ohio's window tint requirements. Cleveland Ordinance § 437.28(c).

(1:19CR110)

driver of the truck, "dipping down" into the vehicle. Detective Yasenchack radioed for assistance and approached the truck's driver-side window. Id.

Detective Yasenchack requested Defendant's driver's license and proof of automobile insurance. Id. There were no passengers in the vehicle. Id. Detective Yasenchack observed that Defendant was "visibly nervous and his hands were shaking." Id. at PageID #: 71-72. Though Defendant furnished a valid driver's license, his automobile insurance had expired. Id. at PageID #: 72; ECF No. 15 at PageID #: 57.

Detective Yasenchack returned to his car and ran Defendant's information through the law enforcement database. ECF No. 16 at PageID #: 72. The search revealed Defendant's prior convictions for weapon and drug-trafficking offenses. Id.

In response to Detective Yasenchack's call for assistance, Officer Yuhas arrived at the scene. Id. Detective Yasenchack wrote Defendant a citation for a window tint violation, failure to wear a seatbelt, and a lane change violation. Id.; ECF No. 15 at PageID #: 57. The two officers approached the truck. ECF No. 16 at PageID #: 72. Detective Yasenchack instructed Defendant to exit the truck to sign the traffic citation, leading Defendant towards the back of his truck. Id. Defendant complied. Id.; ECF No. 15 at PageID #: 57. Detective Yasenchack informed Defendant that he pulled him over because of the window tint. He asked Defendant if "there was anything inside the truck that the officers should be worried about." ECF No. 16 at PageID #: 72. Defendant responded no. Id. Detective Yasenchack directed Officer Yuhas to handcuff Defendant and informed Defendant that "he was being detained." Id.; ECF No. 15 at PageID #: 57.

3

(1:19CR110)

Defendant asked Detective Yasenchack why he was being detained, to which Detective Yasenchack responded that "he saw some activity on Darwin [Avenue]."[2] Detective Yasenchack asked Defendant about his activity on Darwin Avenue. ECF No. 16-1 at PageID #: 95. Defendant responded that he did not know where Darwin Avenue was.

Detective Yasenchack then asked Defendant if he "had anything on him." Id.; ECF No. 16 at PageID #: 72. Defendant responded that he had a weapon, motioning to his jacket pocket. Id.; ECF No. 16 at PageID #: 72. Detective Yasenchack confirmed with Defendant that, due to his prior record, his possession of a firearm was unlawful. ECF No. 16 at PageID #: 72. Defendant agreed. Id. The officers then searched Defendant's jacket, finding a loaded .40 caliber Smith and Wesson M&P pistol with seven rounds of ammunition in Defendant's right jacket pocket. Id. Detective Yasenchack notified Defendant that he was under arrest and administered *Miranda* warnings. Id.

The officers searched Defendant's person, finding a plastic bag in his right pants pocket.[3] ECF No. 15 at PageID #: 57. After placing Defendant into the back seat of a police car, officers searched Defendant's truck, extracting a bundle of cash totaling $4,922 and six cell phones. Id.; ECF No. 16 at PageID #: 72; ECF No. 16-1 at PageID #: 95. The officers tested the truck's window tint and confirmed that it measured 16% light transmittance, well below the minimum

---

[2] Detective Yasenchack mistakenly asked Defendant about his activity on Darwin Avenue. ECF No. 16-1 at PageID #: 95. Detective Yasenchack was referring to Defendant's activity on Thames Avenue. Id.; ECF No. 16 at PageID #: 72 n.1.

[3] When questioned about the bag, which had its edges torn, Defendant said it had contained marijuana.

4

(1:19CR110)

level of light transmittance required under Ohio law.  ECF No. 16 at PageID #: 72-73.  Defendant was transported to the county jail for the weapons violation, and his truck was towed.  Id. at PageID #: 73; ECF No. 16-1 at PageID #: 92-93.

Defendant was indicted on one count of being a felon in possession of a firearm and ammunition, under 18 U.S.C. § 922(g)(1).  Defendant filed a motion to suppress, seeking suppression of all evidence found and any statements he made during and after the aforementioned events.  ECF No. 15.  The Court held an evidentiary hearing on July 18, 2019.

**II.**

**A.**

Defendant first claims his Fourth Amendment rights were violated because Detective Yasenchack lacked probable cause to initiate the traffic stop or reasonable suspicion to conduct an investigatory stop.

*"*As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); *see* United States v. Copeland, 321 F.3d 582, 593 (6th Cir. 2003) ("First, in the largest class of cases, this court has held that a police officer has probable cause to stop a vehicle based upon an observed moving violation.").  The changing of lanes without using a traffic signal is a traffic violation under Ohio law and Cleveland municipal ordinance.  O.R.C. § 4511.39; Cleveland Ordinance § 431.14.

Defendant does not argue that he did not commit a traffic violation.  Rather, he argues that, because Detective Yasenchack "does not note in his [field] report that this traffic stop was

5

(1:19CR110)

the result of any traffic violation" and only informed Defendant of his traffic violations after first speaking with Defendant, returning to his police car, and communicating with the later-arriving officer, Detective Yasenchack did not actually observe Defendant committing a traffic violation. ECF No. 15 at PageID #: 63.

This argument is without merit. Detective Yasenchack testified that he observed Defendant committing a traffic violation by changing lanes without signaling. That Detective Yasenchack first requested Defendant's driver's license and proof of insurance, ran Defendant's information through a law enforcement database, and waited for a backup officer before notifying Defendant of his traffic violation has no bearing on whether Detective Yasenchack observed the traffic violation. Detective Yasenchack's decision not to specify in his field report that the traffic stop was conducted for the purpose of issuing a citation for Defendant's traffic violation is also irrelevant. At best, these are probative of Detective Yasenchack's subjective intent in initiating the traffic stop. As Defendant admits, however, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.

In addition to having probable cause to initiate a traffic stop, Detective Yasenchack had reasonable suspicion to justify an investigatory stop. Reasonable suspicion of an ongoing misdemeanor is adequate justification for an investigatory stop. *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). This includes window tinting violations.[4] *Id.*;

---

[4] The Government contends that Detective Yasenchack had probable cause to believe Defendant's windows were unlawfully tinted. ECF No. 16 at PageID #: 77. Because the window tint violation was an ongoing misdemeanor, reasonable suspicion is sufficient.

(1:19CR110)

*United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008). Whether there is reasonable suspicion is determined by the totality of the circumstances, including the information known to the officer and any reasonable inferences to be drawn at the time of the stop. *United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002).

Detective Yasenchack had, at a minimum, reasonable suspicion to believe that Defendant's truck windows were unlawfully tinted. Detective Yasenchack observed Defendant's truck pull up and park on Thames Avenue, just before he saw a man enter Defendant's the truck. While only three to four houses away, because of the truck's tinted windows, Detective Yasenchack could only make out two silhouettes inside of the truck. Under Ohio law, it is unlawful to have a window tint with less than 50% light transmittance. Ohio Rev. Code § 4513.241; Ohio Admin. Code § 4501-41-03(A). Officers subsequently measured the window tint at 16% light transmittance, far below the legal minimum. Based on his observations, and at the time he initiated the traffic stop, Detective Yasenchack had reason to believe Defendant's windows were illegally tinted.

Separately, Detective Yasenchack, based on his surveillance at Thames Avenue, had reasonable suspicion to believe Defendant was involved in a drug transaction. Detective Yasenchack was aware that drug dealers frequently completed drug transactions on Thames Avenue. He observed Defendant's black Dodge Ram truck pull up and park on the south side of Thames Avenue. He witnessed a man walking up to the truck from a nearby house. The man had his hand in his sweatshirt pocket. There was a bulge in the pocket. The man opened and entered the truck through the truck's front passenger door. Upon the man's exit from the truck,

7

(1:19CR110)

Detective Yasenchack noticed that the bulge in the man's pocket had disappeared. Based on these facts, and on Detective Yasenchack's prior experience and training, he reasonably suspected that a hand-to-hand drug transaction had occurred. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (courts must look at the "totality of the circumstances," including an officer's experience and specialized training, to determine whether the officer has a particularized and objective basis for reasonable suspicion).

Finally, Defendant's argument that his Fourth Amendment rights were violated because he was ordered to exit his vehicle fails. "[O]nce a motor vehicle has been lawfully detained . . . the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977).

Accordingly, the Court finds that the initial stop did not violate Defendant's Fourth Amendment rights.

**B.**

Next, Defendant contends that his Fifth Amendment rights were violated because Detective Yasenchack, before reading Defendant his *Miranda* rights, and while Defendant was handcuffed, asked Defendant whether he was armed. He contends that, as a result, his unwarned statements should be suppressed. He further claims that "the subsequent search and discovery of a firearm[,]" obtained as a result of Detective Yasenchack's questioning, should also be suppressed. ECF No. 15 at PageID #: 66.

(1:19CR110)

**1.**

*Miranda's* procedural safeguards apply whenever a person is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Routine traffic stops are non-custodial because they are noncoercive, temporary, and brief in nature. *Berkemer v. McCarty*, 468 U.S. 420, 437-40 (1984). Accordingly, *Miranda* warnings are not required during a routine traffic stop. *Id.* at 440.

A routine traffic stop becomes non-custodial when, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Id.* (quotation omitted). "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* at 442. This inquiry may be guided by a number of factors, including:

> (1) whether a reasonable person in the defendant's position would have felt free to leave; (2) the purpose of the law enforcement questioning; (3) whether the place of the questioning was hostile or coercive; (4) the length of the questioning; and (5) other indicia of custody such as (a) whether the defendant was informed at the time that the questioning was voluntary or that the suspect was free to leave; (b) whether the defendant possessed unrestrained freedom of movement during questioning; (c) and whether the defendant initiated contact with the police or acquiesced to their requests to answer questions.

*United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 881-82 (S.D. Ohio 2016) (quoting *United States v. Jimenez-Robles*, 98 F. Supp. 3d 906, 916 (E.D. Mich. 2015)).

By pulling Defendant's truck over and requesting Defendant's driver's license and proof of insurance, Detective Yasenchack initiated a routine traffic stop. Detective Yasenchack's instruction to Defendant to exit the truck to sign the traffic citation did not convert the stop into a custodial stop. *See Berkemer*, 468 U.S. at 441-42 (no custody when officer instructed the driver

9

(1:19CR110)

to exit the vehicle to perform a sobriety test). At this point, Defendant had not been placed into custody.

By directing Defendant towards the back of the truck, handcuffing him, and asking him about his activity on a Cleveland side street, however, the encounter became a custodial stop. "Handcuffs are generally recognized as a hallmark of a formal arrest." *United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004); *see also New York v. Quarles*, 467 U.S. 649, 655 (1984) (applying rule that "the ultimate inquiry [regarding custody] is simply whether there is a formal arrest or restrain on freedom of movement of the degree associated with a formal arrest" and agreeing that the defendant, surrounded by at least four police officers and handcuffed prior to questioning, was in custody). A reasonable person would not "feel free to leave" while handcuffed. Nor was Defendant informed that he was free to decline to answer questions or terminate the encounter. "[T]he lack of a police advisement that the suspect is at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention." *Jimenez-Robles*, 98 F. Supp. 3d at 918 (quoting *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993)). Instead, Detective Yasenchack informed Defendant that he was being "detained for his activity on Darwin Avenue." ECF No. 16 at PageID #: 72. That suggests, if anything, that the stop was no longer a routine traffic stop. Rather, a reasonable person in Defendant's position would have believed that his freedom of action was "curtailed to a degree associated with formal arrest."

The Government relies on a district court case to support its argument that handcuffing is not dispositive of whether a suspect is in custody, particularly when officer safety is at issue.

10

(1:19CR110)

ECF No. 16 at PageID #: 83 (citing *United States v. Newton*, 181 F. Supp. 2d 157 (E.D.N.Y. 2002)). The district court in *Newton* found, *inter alia*, that the defendant was not in custody despite being placed in handcuffs. *Id.* at 174-75. On appeal, the Second Circuit affirmed the judgment of the district court, but found that "handcuffing Newton, though reasonable to the officers' investigatory purpose under the Fourth Amendment, nevertheless placed him in custody for purposes of *Miranda*." *Newton*, 369 F.3d at 677. *Newton* therefore cuts against the Government's position.

The other cases upon which the Government relies are inapposite. For instance, the Government cites to cases indicating that the use of handcuffs does not turn a *Terry* stop into a formal arrest. *United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007); *Houston v. Does*, 174 F.3d 809, 814 (6th Cir. 1999). But *Atchley* and *Houston* are Fourth Amendment cases, not Fifth Amendment cases. Whether a *Terry* stop turns into a formal arrest and whether a non-custodial encounter becomes custodial are two distinct inquiries. *United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995); *see also Newton*, 369 F.3d at 673 (citing *Ali* and cases from other circuits holding same).[5]

Accordingly, Defendant's responses to Detective Yasenchack's questions after being handcuffed were a product of a custodial interrogation.

---

[5] The Government's other cited cases are factually dissimilar or do not support the Government's position. *United States v. Matcovich*, 522 F. App'x 850, 852 (11th Cir. 2013) (defendant was handcuffed at home and told he was free to leave at any time, not in custody, and did not have to answer questions); *United States v. Latz*, 162 F. App'x 113, 117 (3d Cir. 2005) (handcuffed defendant was "clearly in custody"); *United States v. Fornia-Castillo*, 408 F.3d 52, 65 (1st Cir. 2005) (defendant was briefly handcuffed on a busy public street, and only one officer was present).

(1:19CR110)

**2.**

"[T]here is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence. *Quarles*, 467 U.S. at 655. The exception applies "when officers have a reasonable belief based on articulable facts that they are in danger." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). "For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). "The public safety exception applies if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety." *Id.*

Detective Yasenchack had reason to believe Defendant was armed. Based on his observations of Defendant's activity on Thames Avenue, Detective Yasenchack had reasonable suspicion that Defendant was engaged in drug trafficking. An officer "could reasonably rely upon the well-known fact that drug trafficking often involves the use of weapons, creating the necessary nexus between drug transactions and weapons searches." *United States v. Carter*, 558 F. App'x 606, 612 (6th Cir. 2014). Additionally, after running Defendant's information through the law enforcement database, Detective Yasenchack learned that Defendant had previously been convicted for weapon and drug-trafficking offenses.

The second prong of the analysis, however, has not been satisfied. The body camera video evidence clearly shows that Defendant's hands were cuffed behind his back. Defendant

(1:19CR110)

was positioned between Detective Yasenchack and Officer Yuhas were. Defendant was alone. Under the circumstances, the officers could not have reasonably believed that Defendant, while handcuffed, or anyone else, could have accessed a firearm on Defendant's person and inflicted harm.[6] The public safety exception does not apply.

Accordingly, the Court grants Defendant's motion to suppress his unwarned statements in response to Detective Yasenchack's questioning.[7]

**3.**

Though the parties did not brief the issue, the Court examines whether the officers' failure to provide *Miranda* warnings is a legitimate basis to suppress the firearm and ammunition discovered on Defendant's person.

The purpose of *Miranda's* safeguards is to protect against violations of the Self-

---

[6] That a defendant is handcuffed at the time of the unwarned statement "does not foreclose the application of the *Quarles* exception." *United States v. Williams*, 272 F. App'x 473, 478 (6th Cir. 2008). The defendant in *Williams* was handcuffed and questioned in a house officers suspected was used to facilitate drug transactions. *Id.* at 474-75. After the defendant was handcuffed, he "reach[ed] repeatedly for a ceramic plate that was visible underneath the front of the couch." *Id.* at 475. The officer noted that such plates are "often used for cutting crack cocaine and therefore tend to have razor blades on them." *Id.* Defendant, in contrast, was handcuffed on a public street and positioned at the rear of his vehicle. His hands were cuffed behind his back in a manner such that it would have been impossible for him to reach for a weapon. Detective Yasenchack and Officer Yuhas were standing on either side of Defendant. Unlike in *Williams*, nothing suggests that the officers reasonably believed Defendant could have accessed a weapon under these circumstances.

[7] Statements made by Defendant after he received his *Miranda* warnings are not subject to suppression.

13

(1:19CR110)

Incrimination Clause of the Fifth Amendment. *United States v. Patane*, 542 U.S. 630, 636 (2004). "The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context." *Id.* "Negligent or even deliberate failures" to provide a *Miranda* warning justify the exclusion of unwarned statements, but do not justify suppression of physical evidence. *Id.* at 641-42. However, exclusion of the physical fruit of an involuntary, coerced statement is proper. *Id.* at 644; *see also United States v. Hilton*, 625 F. App'x 754, 759 (6th Cir. 2015); *United States v. Reese*, 509 F. App'x 494, 503 n.2 (6th Cir. 2012).

"When considering whether a confession is voluntary, [courts] look at 'the totality of the circumstances' to determine whether 'a defendant's will was overborne in a particular case.'" *United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007) (quoting *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994)). "A confession is involuntary if the police engaged in objectively coercive activity, the coercive activity was sufficiently severe to overcome the defendant's will and the defendant's statements stemmed from the coercion." *Id.*

The evidence shows that, even absent *Miranda* warnings, Defendant's statements were voluntary. That Defendant was handcuffed does not render his statements involuntary. *See Reese*, 509 F. App'x at 501; *United States v. Miller*, 48 F. App'x 933, 952 (6th Cir. 2002). Defendant was questioned on a public street. Detective Yasenchack did not draw his weapon, did not threaten Defendant, did not raise his voice, and spoke in a conversational tone. The

14

(1:19CR110)

conversation lasted for less than a minute before Defendant admitted to possessing a firearm. Neither of the officers present engaged in any coercive activity.

Because *Miranda* does not provide a basis for exclusion of physical evidence obtained as a result of a voluntary statement, the Court denies Defendant's motion to suppress the firearm and ammunition discovered in Defendant's jacket pocket.

**C.**

Finally, Defendant avers that the warrantless search of his truck was an unlawful search in violation of the Fourth Amendment. In support, Defendant argues that the automobile exception to the warrant requirement does not apply because there was no probable cause that the vehicle contained evidence of criminal activity. He further contends that no other exception applies.

"It is well-established that law enforcement officers may make a warrantless search of a legitimately seized vehicle provided the inventory is conducted according to standardized criteria or established routine." *United States v. Hurst*, 228 F.3d 751, 758 (6th Cir. 2000). Following Defendant's arrest, Defendant's truck was left abandoned near the intersection of Ivanhoe Road and Halliday Avenue. There were no other passengers in Defendant's truck. Defendant's truck was accordingly towed pursuant to Cleveland Police Department policy. To secure the truck for towing, the officers performed an inventory search of the vehicle. A routine inventory search conducted in conjunction with the lawful towing and impounding of a vehicle falls under the community caretaking exception to the warrant requirement under the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364, 368-76 (1976).

15

(1:19CR110)

Because the community caretaking exception applies, the warrantless search of Defendant's truck did not violate Defendant's Fourth Amendment rights.

**III.**

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 15) is granted in part. The Court grants Defendant's motion to suppress his unwarned statements in response to Detective Yasenchack's questioning. Defendant's motion is otherwise denied.

IT IS SO ORDERED.

| | |
|---|---|
| July 19, 2019 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |